Good morning, Your Honors. May it please the Court, I'm Thomas Siegel, Counsel for Appellants. I will start with the plausibility argument. One thing that I think is important to note about the plausibility argument is that the operative complaint, in addition to alleging that Mr. Gomez did not receive the way statements, it also alleges a theory that, under California law, mailing of way statements is not permissible. And that is clearly an issue which implicates more people than just Mr. Gomez. And it's clearly an issue that can be adjudicated one way or another on a class-wide basis. But, Counsel, the difficulty is that there were no allegations that other individuals failed to receive the statements. There were no allegations in that complaint, any specific allegations regarding that. Am I incorrect in my reading of the complaint? Well, so I don't think the court is incorrect in the sense that did we identify somebody and say, no, they also didn't receive way statements, no. But, from the factual allegations, I think it can be inferred that this was not something that just happened to Mr. Gomez. So, for example, you have the fact that- How can we infer that? How can we infer that it happened to other people if that's not alleged? Well, so, it can be inferred for several reasons. There is the fact that they assert, I mean, there's the Bernal Declaration, which states that they mail, it states what their practices are, it states that they mail weekly, and what happened to Mr. Gomez calls into serious question whether that is, in fact, the practice. Because they assert that they mail it weekly. He worked there for 12 weeks. He should have received at least 12 way statements. And if they were actually mailing it, he alleged that he checked his mail diligently, there's been no assertion that any of this mail- Are you basically relying on an inference? Yes, and I think it is a- But you were given six opportunities to amend the complaint. Why should, at this stage, all you have on this claim be just a plausible inference? Well, once this case got to federal court, there was no discovery. The district court imposed a stay on discovery while the pleadings were resolved. But under Rule 11, you should have done an investigation before you filed your complaint, right? I think it would be of concern if you couldn't file a complaint without discovery, because you hadn't done enough of a Rule 11 investigation to have support for the allegations that you were intending to assert. Well, we did do an investigation. We requested his personnel file under California law. We only have the right to request our client's personnel file. We don't have the right to obtain anyone else's personnel file before the case is filed. And I think the inferences here should be regarded as compelling, but- Counselor, isn't the opposite inference just as plausible, that there was a glitch with your client, but not with anyone else? Not given all of the facts, because first, I mean, it happened 12 times. Whatever the glitch was- But just with him. That's my point, that it could have been something that was unique to him, his address or whatever, that was unique to him and not necessarily a system failure. But you also have the fact that they are unable to produce any actual copies of the wage statements. For him, for him. I don't believe that's correct. I believe that the Bernal Declaration says they can't produce the wage statements for anyone. And this is despite- Doesn't that just indicate that they don't maintain paper copies? They have electronic, they store the information electronically, and they've said they can replicate your wage statement and print it for you as opposed to, who knows how much paper this would be, but seems to be sort of the way things are stored now is electronically. Well, I mean, that's right, but they also say that they email people the wage statements. And so they say they're unable to produce those either. And so I don't understand how, if they're emailing people the wage statements- Well, wait a minute. Did they have Mr. Gomez's email address and try to send it to him by email? I believe that they did not have his email address. Okay, so, and you've said you couldn't do discovery as to other employees, so do you know if they have maintained emails for other employees? Well, that's what the Bernal Declaration says. The Bernal Declaration says that when they have the email address, they email the wage statement. Right, but then the next question is, you've suggested that this isn't true, because they don't have the electronic copies of the email. Like, you have send, and maybe there's an outbox, and they should have all these emails. But your client didn't give them an email address, so they wouldn't have it for him. They didn't send them to him by email. And you've said you didn't get information on other employees, so I'm seeing sort of a disconnect as to how do we then leap to the conclusion that they don't indeed have these emails. Maybe they don't, but how do we know that? Well, I mean, that's what I think the Bernal Declaration implies. It says they don't have copies of the wage statements, and that, therefore, they have to be, as the Declaration says, regenerated. But the thing that we know happens to more than, not just to Mr. Gomez. Can I ask you, in paragraph nine of the Bernal Declaration, it says, attached here too, as Exhibit A is a replica of the wage statement Elite provided to Mr. Gomez on October 24th, 2019. So they did at least replicate, at least for one pay period, a wage statement that they believe they sent to Mr. Gomez. Is that right? That's right. Well, they regenerated it, and it even says in the Bernal Declaration that there's certain information in there. I believe it says the yearly totals are not accurate. So that is not the actual wage statement that they say was sent to Mr. Gomez. They admit it actually differs from it. It doesn't have the correct information. But what did happen to more people than Mr. Gomez is the mailing of wage statements. And under California law, it's very clear that you can only mail a wage statement if you pay in cash or personal check, and that has been judicially interpreted to include cashier's checks. But I think it is very unlikely that they were paying everybody that they were mailing the wage statement to with cash or personal check. I thought they paid them with some sort of card, something like a gift card, a cash card of some sort. That's right, Mr. Gomez was paid with a pay card, and there would be a class-wide issue of whether that is in fact equivalent to cash. And there are many differences, right? I mean, one difference between a pay card and cash is there's actually a privacy issue, right? When you are using a pay card, there exists a record somewhere of every transaction that you make. There also may be fees associated with using the pay card. You can't use the pay card necessarily to pay your rent, right? If you owe somebody money, if you owe a relative money, you can't use that pay card to pay them the way you would with cash. So there are class-wide issues related to the practice of mailing and whether that was lawful. And so that very clearly is a class-wide issue. And also, of course, not just a class-wide issue, but I should say a representative issue. Because this issue of whether this only happened to Mr. Gomez, it was also the basis for dismissing the PAGA claim. Because of a Huffy Securitas and other case law which says that a PAGA plaintiff cannot proceed solely on their own claim, they have to pursue a claim for other employees. Can I ask you a question? Your complaint is supposed to give the defendant sufficient notice so they know how to defend themselves. How would they know that you're making this wage statement class claim based on an inference? Because the language explicitly seemed, I see what you're saying is talking about, hey, we think there's a problem overall with the mailing of wage statements. But the specific allegations all seem to be particular to Mr. Gomez. So how is that sufficient notice that they're actually defending a class claim on wage statements? Well, because I suppose I don't really agree that it's all limited to Mr. Gomez because there are allegations about the Banal Declaration and- Well, I have the sixth amended complaint. Can you point me to any specific paragraphs? Well, so I think that these are, So what I have in my notes are actually citations to the fifth amended complaint. The only change that was made to the sixth amended complaint was actually deleting references to one of the entities. And certainly, a paragraph's 23 to 31 of the fifth amended complaint. It talks about how Elite admits that it has no copies of the statements it says were mailed to employees. And also no electronic copies of the wage statements it says were emailed to employees. So that's an allegation that goes beyond Mr. Gomez and refers to their general practices. And it can be inferred that what they say they were doing was not actually occurring. And so now I will go to the issue of mootness. Because before we leave that, usually when we have cases like this where it is asserted that the company had a systematic practice of failing to provide the wage statements. There are other specific individuals who are listed who were not provided wage statements. So in doing an investigation, you were not able to come up, your client wasn't able to give you the names of any other individuals who were not provided with their wage statements? No, and I mean, he worked there for three months. I don't know that he specifically knew anybody there. And I think what your Honor just identified is really the only way that that information could have been elicited. But again, So to get to the issue of mootness, so the Nehru's case, Nehru's versus Charter Communications, that case says that the plaintiff must maintain a financial interest in the action, notwithstanding the settlement of the individual claim. Did the district court say this case was moot? No. Who raised the mootness argument? I thought that the court wanted that to be addressed. Did we ask for that? Yeah, it was a focus order. The focus order, yes. Okay, so under the Nehru's case, the plaintiff Gomez here does have a financial stake. And that's true for at least two reasons. The first is the Paga claim that I talked about, because that claim was dismissed entirely. That's different than what happened with the labor code wage statement claim, because for the labor code wage statement claim, only the class claims were dismissed. But the district court dismissed the Paga claim in its entirety, because of this issue of whether what Mr. Gomez alleges, whether it happened to other employees. And so if it were to be determined that there is a plausible class or representative theory, whether that's the issue of the legality of mailing or the inference based on the Bernal Declaration, the Paga claim would be reinstated. And so if the Paga claim is reinstated, Mr. Gomez would be entitled to a share of the Paga penalties that are awarded. So he clearly has a financial interest in- So is your argument that the case would not be moved only if the Paga claim is reinstated? No, because I think the other issue is, as I read in the Ruse case and the other cases, Brady versus AutoZone and Campion versus Old Republic. In Brady versus AutoZone and Campion versus Old Republic, the plaintiff released any and all claims for attorney's fees. And in the Ruse, this court pointed out that in addition to the potential incentive award in that settlement, there also was a claim for attorney's fees related to the class claim. Is his individual claim still pending? His individual wage statement claim is still pending, but not the individual. Well, it's not pending because it was a judgment. You know, I think you, I would disagree with your reading of the cases. You're saying, because he might have a Paga claim, that gives him a financial interest in his class claim. I don't think that's right. Now, Ruse is saying, do you have a financial interest in your class claim? And Mr. Gomez had a full, complete, final disposition, judgment, and settlement of the first cause of action in his Sixth Amendment complaint. Now, it does say, as asserted on behalf of Gomez individually, but the first cause of action is the plaintiff and wage statement class. So, but yes, and that stipulation also only resolves the attorney fee claim for his individual claim. It doesn't resolve the attorney fee claim for the class, which I think makes this like the Ruse. But I also think, to go back to your honest question, that these issues are intertwined. What he has to prove to prevail on the class claim. But what financial interest does he even have on the class claim when his individual claims are completely gone? Well, he has a- How can he even be a member of the class still? He's fully settled his claims. Well, I think this is actually analogous to what would have happened if we had actually done the trial. I mean, if Mr. Gomez had done the trial and had prevailed and had been awarded compensation for not being provided wage statements, we then could go up on appeal and appeal the denial of class certification. So I don't really see how this differs. But also, I think the Ruse indicates, I mean, they do talk about- How can he be a class representative if he has no claim? Well, again, I don't see how this is different from the situation where if he had gone to trial and prevailed. In that situation- Well, it's different in the sense that, one, the claim was settled, or two, it went to trial. And here, it did not go to trial. And our case law specifically talks about whether there's jurisdiction for the class member, a putative class member, to appeal if they've settled their claim. So that's why it's different, that our case law specifically carves out that distinction. You can't say, well, it's just as if he went to trial even though he settled. Because he settled, so he didn't go to trial. So then the question is, does he have jurisdiction for the appeal? And he has to have a personal stake. And he settled his personal claim, and he settled his claim for attorney's fees. And it doesn't seem from the settlement agreement that there's any personal stake left, that he has a right to recover additional money from attorney's fees or some sort of compensation for being a class rep. I mean, I didn't see that. Is there anything where he has a personal stake? Well, I mean, so first of all, certainly there is a personal stake for the PGA. So- But we're talking about the class claim now. Right, yes. And so I think that, as I read Nehru's, Mr. Gomez has a personal stake because the release of attorney's fees was limited to attorney's fees for his individual claim. And so I think that does make this like Nehru's. So you think he has a stake in a recovery of attorney's fees for other claimants? Yes. I mean, he doesn't get any of that money. It goes to the attorneys, right? So- I mean, that would be true for the attorney fees on his individual claim as well. But he's already been paid in full for his claim for damages and penalties for his wage statement claim, and he's already been paid in full for his attorney's fees for that claim. You would agree that's three A, B, and C of your settlement agreement. Judgment, or that's the judgment. But again, I mean, I do think if you read the Nehru's case, it does indicate, I mean, it distinguishes a case called Tom's 179F3rd at 105, where the class representative relinquished any and all claims of any kind in nature in addition to any claims for attorney's fees and costs. And it then says, when they explain why the plaintiff in that case had a financial interest, that he retained a continued financial interest because of the enhancement award. But then it says, further, the agreement provides that the claim for attorney's fees and costs has not been released. So I think under that logic, the claim for class-related attorney fees provides Mr. Nehru's a financial stake. I mean, if attorney's fees provide a financial, I understand the argument that the money doesn't go to the named plaintiff. But the Nehru's case says that the claim for attorney's fees provides a financial interest. And so with that, I'd like a couple of minutes for rebuttal if necessary. Well, you've used your time, but we'll give you a minute or two for rebuttal. Okay, thank you, Your Honor. Good morning, Your Honors. May it please the court. My name is Christopher Decker. I represent the defendant, appellee, and cross-appellant. Elite Labor Services Weekly is limited. Because we are a cross-appellant, I would like to reserve two minutes for rebuttal. But let me begin, may it please the court, by addressing the two questions that were identified in the court's focus order. The first one being the question of mootness, and the second one being the question of whether there are plausible allegations that anybody other than the named plaintiff suffered a violation of Labor Code 226A. First of all, with regard to mootness, we just heard from plaintiff's counsel that he recognizes that under this court's law, in order for him to continue to prosecute a class claim for violation of Labor Code 226, he would have to retain some sort of financial interest in the outcome. And the first financial interest he identified is a financial interest not in the outcome of the class claim, but a financial interest in the outcome of a PAGA claim, which obviously is not going to give him a financial interest in the outcome of the class claim. Let's say we agree with you on that, or at least assume I do. You agree the PAGA claim wasn't part of the individual wage statement settlement, correct? Correct. It had been dismissed. But do you agree that that claim isn't moot? Well, I would agree that the mootness issue that we're discussing right now would not affect that claim. I think the dismissal of that claim should be upheld on other grounds. Now, with respect to the second financial interest that he identified, which is an interest in recovering attorney's fees, the case law that's cited in the focus order says that whether or not a financial interest is retained is determined by the language of the agreement, which in this case would be the language of the stipulated judgment, and that silence is not good enough. There has to be an affirmative retention of an interest. And this stipulated judgment was stipulated. It was prepared by both counsel jointly and submitted by both counsel jointly, and none of this case law is new. So plaintiff's counsel had every opportunity they needed to insert language into the stipulated judgment to clarify that they were or that plaintiff was retaining an interest in the outcome of the class claims, and they didn't do it, right? At best, they stuck in in various places that the individual claim was being resolved, right, and that the class claims were not being resolved. But the case law from this Court is that that's always true, and even if it is true, and I'm thinking of the Campion case in particular, where there was a Rule 68 offer of judgment, which clearly did not resolve the class claims, right, there's got to be something more. There has to be some language indicating that if class certification is obtained at some point in the future, that plaintiff is going to benefit in some concrete financial way, and that can easily be added, and it wasn't. But just so I understand your point, are you agreeing that this appeal is not moot because we need to decide whether or not the District Court erred in striking the class allegations? I think that I am arguing that the appeal from the denial of certain, well, the appeal of the order striking the class allegations is moot. Why? Because plaintiff has no financial interest in the class claims. He has been fully compensated for the harm that he suffered. He has been, his attorney's fees have been paid in full, and he stands, there is nothing further for him to gain individually if the class certification, if that claim is certified and there is a judgment and a recovery on behalf of the class. So we inserted this issue into the case with our focus order. Why didn't you argue it? I didn't argue it because, frankly, Your Honor, I was focused on other issues. I was focused on the issues that had been briefed below and that had been argued below, and our goal in stipulating the judgment was to avoid the cost of trial. We were not trying to moot the claim. We were simply trying to avoid the cost of trial. And given that our interest was not, our interest was limited to avoiding trial, I didn't investigate the mootness issue because I think that's an issue that falls on the shoulders of plaintiff's counsel to investigate, and I think it's their responsibility to insert into the stipulated judgment whatever they need to in order to preserve the right to pursue the class if that's their intention. So that's why I didn't raise it. I appreciate your candor. Can we go to the motion to dismiss? Because I appreciate that you conceded that you don't think the Paga claim is moot, but you think it was rightly dismissed for other reasons. I agree that the allegations in the Sixth Amendment complaint, they do assert a class wage statement claim, but the allegations other than this company mails their wage statements and there must be a problem because I didn't get 12 of my wage statements is what is asserted on behalf of Mr. Gomez. Why on a motion to dismiss shouldn't plausible inferences be made in favor of the non-moving party? Isn't that what's required on a motion to dismiss? Reasonable inferences should be made. There's a threshold set by the Supreme Court in the Iqbal and the Twombly cases to state a plausible claim for relief. Conclusory allegations are insufficient. There have to be facts, right? The facts plus the reasonable inferences that can be drawn from those facts have to add up to something that is plausible, not just possible. I think the questioning during plaintiff's argument made it clear that there are any number of possible explanations for the non-conclusory facts that have been alleged. And I do think the panel... But why is it plausible that the Postal Service messed up 12 times consecutively? Why is that a plausible inference? And why isn't it a reasonable or plausible inference that Mr. Gomez should have received 12 wage statements and got zero? So to say, oh, this is just an individual one-off error. Why would that happen 12 times? Or why would that be a reasonable or plausible inference that an individualized error would repeat 12 consecutive times? Because they had the wrong address? Because he didn't check his mail? Because somebody else got to the mailbox? But then you're asking us to disregard the allegations in the complaint. The allegations in the complaint are, and they reference the Bernal Declaration, the allegations in the complaint are, this is my address, they claim they sent it to this address, and I checked and I didn't get it. So we have to accept those allegations as true. This is a motion to dismiss, not motion for summary judgment or trial. So why... You're asking us to read allegations contrary to what's in the complaint. Why is that appropriate on a motion to dismiss? I don't think all of those allegations are in the complaint. I think the allegations that are in the complaint are, I worked there for approximately 12 weeks. According to the company, they mailed my wage statements to me. I never received a wage statement. I did check my mail diligently, and I never received a wage statement. I think those are the allegations. Well, I'm looking at paragraph 21 on page 4. Quote, however, although defendant had the correct address for plaintiff, plaintiff never received any wage statements from Elite in the email. Plaintiff was diligent about checking his mail and would have opened mail from Elite. I don't think with that allegation, I can then infer that Elite had the incorrect address for Mr. Gomez or that Mr. Gomez never checked his mail. Well, I think it's... I think that would be contrary to what I'm required to do on a motion to dismiss. Well, I think it's... Two points. First of all, I think it still very much leaves open the possibility that although they had the correct address in their records, there was some sort of typographical error. There was some sort of glitch. There is some sort of mistake that caused the wage statements to be sent to an incorrect address. The second thing is, even if the most plausible, or even if the plausible inference is they never mailed them at all, contrary to the sworn declaration testimony of Angelica Bernal, why is it plausible that they didn't mail them as they said to anybody else? That, I think, is a second inference that is not supported either by any facts that have been alleged or by any... ...the case law says that the court must apply common sense and judicial experience. I don't think it's a reasonable inference that even if they just, for some reason, passed right over him and didn't mail wage statements to him, that they didn't mail wage statements to anybody else. And in fact, the declaration testimony is that mailing wage statements was the exception, not the norm. The norm was to email wage statements, right? And the exception in those cases where they didn't have an email was to send them. But I don't think there's a plausible inference there that because they didn't send them to Mr. Gomez, as they said they did, they also didn't send them to anybody else to whom they claimed to have sent them. I don't know if that's the Bernal Declaration, Paragraph 4 says, as a result, each week copies of paper wage statements for every elite employee assigned to work at PrimeSource were addressed to the employee's home address on file with elite and placed in the U.S. mail. It almost seems the opposite that... It says, in addition to providing paper copies of the wage statements, elite provides an electronic copy of their wage statement via email to each elite employee in California who provides an email address to elite. So the Bernal Declaration makes it seem like they did both for every employee. And then if it was an employee who didn't provide an email address like Mr. Gomez, they only did the mail. Right. So my point is that that would not be the norm, right? The norm would be that there are multiple mechanisms of delivery, right? Including email. In some cases, if they don't have an email address, then the only option is to mail it. So opposing counsel argued that elite doesn't have the records of the pay statements based on the Bernal Declaration about creating replicas. Can you explain what that is? It's confusing to me in the record what it is that elite maintains. And I think he was also suggesting that if you had... Not with Mr. Gomez, because you didn't have his email address, but with other employees, there should be records of sent emails, and that elite doesn't have them. Well, what elite has is the data. Elite does not have either hard copies or soft copies of the piece of paper that was printed and distributed. Elite has the data. And that's its obligation, is to retain the data. And it can, from the data, create a replica which is accurate with respect to all of the information that is legally required to be provided at the time of payment, which is the hours worked that week, the wages that were paid that week, the dates of the pay period, et cetera. The only thing that's different about that replica is the year-to-date amount, which is extra information that's not required by the statute. So elite has all of the records that it is legally required to maintain. As for whether or not it has records of the emails, there's no allegation that it does or that it doesn't. The only information with respect to the emails is that it was a common practice to make the wage statements available by email for those employees who had provided an email address. The case was dismissed at the pleading stage based on the allegations of the complaint. There hasn't been any discovery. And so there are no facts in the record about whether or not those key mails or copies of those emails exist. Counselor, did you want to address your cross-appeal? Excuse me? Yes. So I also wanted to briefly address the question about whether mailing is permissible. I think the case law, cited by both sides, is that mailing wage statements is permissible if payment is made in cash. We cited to an encyclopedia that a debit card, a pay card, is a cash transaction. Opposing counsel has some quibbles with that. They're not supported by any authority. But let me talk about the cross-appeal. We cross-appealed from two rulings. The first ruling being the denial of the motion to dismiss based on the prior settlement between the parties in a separate action. And then the second basis for cross-appeal was that if the meal period and rest, if the order dismissing the claims for meal periods, rest break violations, failure to pay overtime, failure to pay minimum wages, if any of those are reversed, the court should examine the sufficiency of the class allegations. Because they're insufficient, they're a conclusory. But let me focus on the first cross-appeal. So as the briefs explain, there is a separate settlement between the parties in a separate action. And the release in that settlement agreement is a broad, all-encompassing release of all claims. Counsel, could we talk about that? On page 207, release claims seem to exclude the wage and hour claims. It says, plaintiff's release claims shall mean all claims known and unknown against the release parties other than the wage and hour claims in Mr. Gomez's class action against defendants. So doesn't that inject some ambiguity into the settlement agreement? I don't think so because the release itself is clearly broader than the definition of plaintiff's release claims. Your Honor is correct that the release begins by releasing, quote, plaintiff's released claims. And plaintiff's released claims is defined to exclude the wage and hour claims that are the subject of the case from which this appeal was taken. But then the very next sentence says, plaintiff also releases. It's clearly, the second sentence is adding on to the first sentence. Those are kind of inconsistent, though, to say there's an exception but there's an inclusion. So doesn't that make it sufficiently ambiguous that it can't be resolved on a motion to dismiss? Well, I don't think so. I mean, I understand, you know, the court below said the same thing. But I think there is no ambiguity when it's read in context and when it's read as a totality. The second sentence, I think by its plain language, goes above and beyond what's in the first sentence. But you're reading out the first sentence. And we assume that all of the words are put there for a reason and that they have meaning. And so if we say that the second sentence subsumes the first sentence, then we're reading out the language in the first sentence. Well, I don't think you're reading it out. You're giving it effect. But you're correct that it would be unnecessary and redundant in light of the second sentence. But the reverse is also true, which is that if you fail to give effect to the second sentence, then you're taking it out of the agreement. But that's why it can't be resolved on a motion to dismiss, because there are two ways to read it. And so it's ambiguous. Right. And I understand the confusion. And I think I've stated my view. At this point, I'd like to preserve my remaining time. Wait, I'm sorry. I have one more question.  What are we to make of the fact that the Bernal Declaration concedes that the year-to-date totals are inaccurate? And that is a separate claim that's in the Sixth Amendment complaint, separate from I never received the mailed wage statement or any wage statement since I didn't provide an email address. But there's a separate claim that these wage statements weren't accurate in their year-to-date totals. And I know you said you don't think that's required to have accurate year-to-date totals in the statements. I think it's pretty clearly not required. The language of Labor Code 226A makes no reference to year-to-date amounts. It only makes reference to the hours worked and the wages paid. But why would it be inaccurate in elites' records? Well, because what's saved in the data... Remember, we're creating a replica from three years ago, right? And what's saved in the database is the year-to-date amount at the end of the year because that end of year has now closed. What they can't do electronically is go back and recapture the year-to-date amount as it was three and a half years ago during mid-year, right? So when you generate a replica, the field for the year-to-date populates with the year-to-date amount as of today, right? Which is the end-of-year amount for 2023, not the year-to-date amount in June of 2023. All right. Thank you, counsel. You're welcome. Rebuttal on the direct appeal and also any response to the cross-appeal. Yeah, so to talk about the cross-appeal briefly, I mean, I don't think there's much more that needs to be said than, at best, this is an ambiguity. I suppose the only other thing I would add is that I believe that, you know, opposing counsel is relying on language in the final judgment that was entered in that case. And the final judgment also says that the parties are ordered to effectuate the settlement agreement according to its terms. And one of those terms is that this case was specifically carved out. And, in fact, the case that they rely on for the whole argument is a case called Minor v. Federal Express. And the issue there was that the release did not identify, by name and case number, you know, the matters that were carved out. And, you know, this issue of them not being able to provide copies of the wage statements, I mean, the copies obviously existed, right? They had to be created. Somebody had to sit on a computer, had to generate these before they were mailed, before they were emailed. And yet they say they have no copies. So I would submit that that's a further inference that calls into question whether they were actually doing what they say they did. And if the Court has any questions, otherwise I will submit. Thank you, counsel. Thank you. Rebuttal. Let's put two minutes. Your Honors, I don't have anything further to say with respect to the cross-motion on the basis that the plaintiff released his claims. May I address the other basis of our cross-motion? You have 1 minute and 45 seconds. You may address whatever you like.  Thank you very much. The other basis of our, I said cross-motion. I should have said cross-appeal, is that if the meal period and rest break or overtime or minimum wage claims are reinstated, then the Court should examine the sufficiency of the class allegations with respect to those claims. There hasn't been any discussion before the Court today. I don't know if the Court has any questions regarding the sufficiency of those claims, even as to the name plaintiff. But we think it's actually quite clear that they don't satisfy the lander's pleading standard. There's no specification of any work week in which a plaintiff was denied the opportunity to take a meal period, denied the opportunity to take a rest break, was not paid for all hours worked, or worked overtime that was unpaid. But even if one could somehow infer sufficient allegations with respect to plaintiff himself, there are no allegations other than just broad conclusory allegations that any other individual had a similar experience, either an elite employee at PrimeSource or an elite employee anywhere else. And so we did move for the trial court to strike the class allegations on that basis. It didn't reach the issue. But I think it would be best, should the scenario arise here, for this Court to raise the issue and to reach the issue. Otherwise, we're likely to go back down. And then the trial court may well strike the class allegations from those complaints. And then we'll be back. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the Court.
judges: RAWLINSON, BADE, KOH